# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

RECO ENGLISH

              Petitioner,

      -vs-

ED BANKS, Warden, Noble
 Correctional Institution,

              Respondent.

:

:

:

:

Case No. 1:11-cv-675

District Judge S. Arthur Spiegel
Magistrate Judge Michael R. Merz

---

# REPORT AND RECOMMENDATIONS

---

Petitioner Reco English brought this habeas corpus action *pro se* pursuant to 28 U.S.C. § 2254 to obtain relief from his convictions in the Hamilton County Common Pleas Court on two counts of possession of cocaine with firearm specifications and two counts, subsequently merged, of possession of weapons under disability.

## Procedural History

On November 9, 2001, the Hamilton County grand jury indicted English on two counts of trafficking in cocaine with firearms specifications, two counts of possession of cocaine with firearm specifications, and two counts of possessing weapons under disability. Trial was delayed for several years by English's absconding from bond. In 2008, however, the case was tried to a jury which convicted English on Count Three of possessing at least five but less than ten grams of

crack cocaine, on Count Four of possessing at least twenty-five but less than one hundred grams of powder cocaine, on both firearm specifications, and on both counts of possessing weapons under disability. On September 5, 2008, he was sentenced to the aggregate eight (later reduced to seven) year term he is now serving. On direct appeal, the Hamilton County Court of Appeals affirmed the drug possession counts and the firearm specifications, but ordered the weapons under disability counts merged under Ohio Revised Code § 2941.25. English attempted a further appeal to the Ohio Supreme Court, which denied review.

English filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 which was dismissed as untimely. That judgment was affirmed by the court of appeals and not appealed further. On July 21, 2010, English filed an application to reopen his direct appeal under Ohio R. App. P. 26(B) which the court of appeals denied; the Ohio Supreme Court denied further review.

Upon the original direct appeal decision remanding the case to the trial court for merger of the weapons under disability counts, the trial court obeyed the mandate, merged those two counts, and imposed one twelve-month prison term. His appointed counsel filed an *Anders* brief and the court of appeals declined to allow him to proceed *pro se*. The court of appeals then affirmed the judgment and the Ohio Supreme Court denied leave for a delayed appeal. On September 14, 2011, English filed in the trial court a motion entitled "Motion to Correct Illegal Sentence pursuant to R.C. Section 2929.19B)(2)(e)" which had not been ruled on as of the time the Return of Writ was filed. The Petition here was filed September 28, 2011.

# Analysis

Petitioner pleads the following grounds for relief:

**Ground One:**  Petitioner asserts that trial court impermissibly punished him for asserting his rights to a jury trial. Prejudice of Petitioner by imposing a sentence that is an abuse of discretion.

**Ground Two:**  The Appellate Court erred to the prejudice of the Petitioner by finding him guilty of the possession of cocaine and having weapons under a disability, as those findings were not supported by sufficient evidence.

**Ground Three:**  The trial court erred to the prejudice of the Petitioner by not granting Petitioner's motion to suppress the search of the residence.

**Ground Four:**  The trial court erred to the prejudice of the Petitioner by finding the Petitioner guilty of possession of cocaine and having weapons under a disability, as those findings were contrary to law.

**Ground Five:** The Petitioner was denied the right to effective assistance of counsel and a fair trial under the Sixth and Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

**Ground Six:**  The trial court erred by not disclosing the criminal informant. The Petitioner's rights were violated when the State used the confidential informant's statements to obtain a search warrant and then proceeded to violate the Petitioner's rights at trial by submitting the informant's statements.

**Ground Seven:**  The trial court erred to the prejudice of the Petitioner by overruling his motion for acquittal under Ohio Criminal Procedure Rule 29.

**Ground Eight:**  Petitioner's rights were prejudiced by the prosecutor. The state committed prosecutorial misconduct, the prosecutor's misrepresentation of material evidence.

**Ground Nine:**  The Petitioner's trial counsel was unable to render adequate legal representation, through no fault of counsel, he was unable to prepare for trial due to the fact that the trial court refused to continue the trial to allow Petitioner's counsel to properly interview

witnesses and complete discovery which deprived appellant his Sixth Amendment right to effective assistance of counsel, as well as his right to due process under the Fifth and Fourteenth Amendments of the United States Constitution.

**Ground Ten:** The appellate court erred by not adjudicating the pro-se brief that the appeal court granted be filed. The appeals court granted the Petitioner to file a supplemental brief but did not adjudicate the pro se brief.

**Ground Eleven:** Petitioner contends that Douglas Ventre's testimony should not have been admitted because his name was not disclosed by the prosecutor.

**Ground Twelve**: The cumulative effect of the errors committed during trial constituted prejudicial error thereby denying appellant his right to a fair trial.

(Petition, Doc. No. 1.)

# Analysis

## Ground One:   Vindictive Sentencing

In his First Ground for Relief, English asserts the trial judge punished him by sentencing him more harshly for insisting on his right to trial by jury. Both parties agree that if this happened, it violated English's constitutional rights.

Respondent asserts this Court cannot reach the merits of this claim because it is procedurally defaulted in that it was not presented to the Ohio courts on direct appeal (Return of Writ, Doc. No. 9, PageID 59-61). Petitioner concedes that this is so, but argues his failure to present the claim on direct appeal is the result of the ineffective assistance of his appellate attorney. Attorney error serious enough to constitute ineffective assistance can be sufficient excusing cause for a procedural default. *Murray v. Carrier,* 477 U.S. 478 (1986). However, the claim of ineffective assistance of appellate counsel

must itself first be presented to and exhausted in the state courts.  *Edwards v. Carpenter,* 529 U.S. 446 (2000).

English did present his claim of ineffective assistance of appellate counsel to the First District Court of Appeals in his Application for Reopening under Ohio App. R. 26(B).   The court of appeals rejected this claim, holding:

> The proposed assignments of error would not have presented a reasonable probability of success had counsel advanced them on appeal. . . .
>
> Nor does the record demonstrate that the trial court imposed an aggregate prison sentence greater than that offered and rejected during plea negotiations to retaliate against English for his rejection of the plea agreement and his insistence on a trial. English's sentences were not presumptively retaliatory, requiring the trial court to expressly disavow a retaliatory animus,  because the record does not demonstrate that the trial court had participated in the failed plea negotiations [footnote omitted] or had made comments suggesting a retaliatory animus. [footnote omitted]   And the record does not otherwise support English's claim that the court, contrary to R.C. 2929.11 and 2929.12, fashioned English's sentences upon consideration of his refusal to plead guilty and his assertion of his right to a trial [footnote omitted].

*State v. English*, No. C-080872 (Ohio App. 1st Dist. Nov. 18, 2010)(unreported, copy at Return of Writ, Doc. No. 9, Ex. 54, PageID 492-493.)

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.   28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).   Here the state appeals court

decided the federal constitutional question of whether English received ineffective assistance of appellate counsel when his appellate counsel failed to raise this claim on direct appeal.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

> would have been different. A reasonable probability is a
> probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987). To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id. citing Wilson.* If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id. citing Wilson.* The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004)*;See Smith v. Murray*, 477 U.S. 527 (1986). However, failure to raise an issue can amount to ineffective assistance. *McFarland v. Yukins*, 356 F.3d 688

(6th Cir. 2004), *citing Joshua v. Dewitt,* 341 F.3d 430, 441 (6th Cir. 2003); *Lucas v. O'Dea*, 179

F.3d 412, 419 (6th Cir. 1999); and *Mapes v. Coyle,* 171 F.3d 408, 427-29 (6th Cir. 1999).

The decision of the court of appeals on Petitioner's 26(B) application shows that that court

applied the correct federal constitutional test: would the proposed assignment of error have

presented a reasonable probability of success? They concluded this assignment of error would

not have succeeded because there was not record support for the claim.

In his Reply, English asserts:

> Petitioner had an agreed sentence of <u>five</u> years which would have
> included felonies of the first degree. The Trial Court had agreed
> and played a role in this plea. See: Tp: 101-103. The jury found
> Petitioner not guilty of the felony ones, therefore the trial court
> punished Petitioner for going to trial by imposing a sentence of eight
> years. . . .

(Reply, Doc. No. 12, PageID 2034.) The place referenced in the transcript is on the first morning

of trial before jury selection. The following colloquy related to a possible plea occurred:

> **Mr. Hardman** [the prosecutor] Lastly, I do want to set
> forward on the record there were discussions with Counsel of a
> possible plea resolution of the case that would amount to basically
> an agreed sentence of five years in the Ohio Department of
> Corrections with credit for time served. It's my understanding the
> defendant has rejected, is not interested in such discussion and we
> are ready to proceed today.
>
> **The Court:** That is certainly the defendant's right and we'll
> proceed.
>
> **Mr. Felson** [defense counsel]: I have presented that offer to
> my client. I'm going to let him on the record accept it or deny it,
> reject it.
>
> **The Court:** He doesn't have to do that. As far as I'm concerned,
> he's been apprised. He's been made aware of the offer. I don't

require him to say anything because he didn't have to accept it.
we'll proceed to trial.

(Trial Tr. 101-102, Return of Writ, Doc. No. 9, Ex. 11, PageID 677-678.)

This record is insufficient to support an inference of vindictive sentencing. All the judge does in this colloquy is to make sure that defense counsel has complied with his ethical obligation to convey an offer to his client. It does not even indicate any "negotiation" has taken place, much less negotiation involving the judge. If this were enough to support a vindictive sentencing claim, then every criminal defendant would be entitled to the lowest sentence offered to him anytime during plea negotiations, even if he rejected the very idea of negotiating.

This argument was very unlikely to have prevailed had it been raised on direct appeal. Therefore the court of appeals' decision that it was not ineffective assistance of appellate counsel to fail to raise it is neither contrary to nor an objectively unreasonable application of *Strickland* or other relevant Supreme Court precedent. Petitioner's First Ground for Relief should be dismissed with prejudice.


### Grounds Two and Seven:   Insufficient Evidence


In Ground Two Petitioner asserts he was convicted of both cocaine possession and having weapons under disability on insufficient evidence. In Ground Seven he claims the trial court erred in denying his motion for judgment of acquittal. Both these grounds raise the same legal question of whether there was sufficient evidence to convict and both will therefore be considered together.

The court of appeals on direct appeal decided this claim as follows:

**[\*P13]** In his first three assignments of error, English contends that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. He contends that [the] state failed to connect him to the drugs and firearms found at the Oesper Avenue residence.

**[\*P14]** In reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the record to determine whether the evidence, if believed, would support a conviction. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus; see, also, *State v. Carter*, 72 Ohio St.3d 545, 553-554, 1995 Ohio 104, 651 N.E.2d 965.  When reviewing a manifest-weight-of-the-evidence claim, this court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997 Ohio 52, 678 N.E.2d 541. The weight to be given the evidence and the credibility of witnesses are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St. 2d 230, 227 N.E.2d 212, paragraph one of the syllabus.

## Evidence at Trial

**[\*P15]** At trial, the state chose not to present the facts of the controlled-drug purchase that supported the search warrant. But Officer Fangman presented limited testimony about his surveillance activity involving the Oesper Avenue residence in the days before the issuance of the search warrant. Fangman testified that, during this time, he had seen English drive away from the residence and return to the residence in a vehicle registered to Brooke Goodwin. Fangman had not seen English leave the house again until after English's arrest. Fangman also testified that English's own vehicle, registered at his mother's address, had been parked outside the residence for the duration of the surveillance period.

**[\*P16]** The state also presented testimony from Fangman and several other police officers who had entered the residence, which

was occupied by only English and Goodwin. According to the police, they found English in a first-floor bedroom in his underwear, near a loaded revolver and ammunition. After the residence had been secured and English had been permitted to dress, English selected clothing from the same first-floor bedroom.

[*P17] Officers searching the residence found 5.92 grams of crack cocaine and 56.09 grams of noncrack cocaine stored in furniture in the bedroom. According to several officers, English had told them where to find some of the cocaine, and he had identified a brown substance they had recovered as old cocaine that had made him sick.

[*P18] In the bedroom and the living room, the police recovered ammunition and some of English's personal belongings, such as his cellular phone, his birth certificate, his high-school report card, and stacks of his mail. Most of this mail was addressed to English at his mother's house located nearby. But one piece of mail from Terrance Barrett, postmarked June 15, 2002, was addressed to English at "2159 O[e]sper Ave."

[*P19] In the kitchen of the residence, the police recovered more drugs, drug-trafficking materials, and a loaded shotgun. Two sets of English's fingerprints were lifted from the shotgun. Trace quantities of drugs and some trafficking materials were found in the basement of the residence on a stove. The shotgun and the revolver recovered were test-fired and determined to be fully operable.

[*P20] English, testifying in his defense, denied that the drugs, the other contraband, and the guns belonged to him. He claimed to live at his mother's house and contended that the only residents of 2159 Oesper Avenue were John Kenney, the owner of the house; Brooke Goodwin; and Terrence Barrett. According to English, he had gone to the Oesper Avenue residence at 2:00 a.m. on November 1 to play dominoes with Kevin Turner, who provided security for Goodwin, a stripper. Then, after Turner had left, he had sexual relations with Goodwin.

[*P21] Contrary to the testimony of the police, English testified that when the police had entered the house, he was in the bathroom, not in the bedroom, and he was fully dressed. English also denied making any admissions or statements to the police concerning the drugs in the house.

[*P22] English explained that his nephew had erroneously brought a large bag of his mail to the Oesper Avenue residence when he was visiting the residence a few weeks before the execution of the search warrant. English admitted to touching the shotgun "a long time ago" to remove it from the living-room couch so that he could sit there. He claimed that he had merely given the gun to Kenney, who had taken it to the "back room."

## Drug-Possession Offenses

[*P23] R.C. 2925.11 prohibits knowingly possessing controlled substances, including crack cocaine and cocaine. English was convicted of possessing crack cocaine in an amount equal to or exceeding five grams but less than ten grams, although he had been indicted for possessing a larger quantity. He was also convicted, as charged, of possessing cocaine that was not crack in an amount equal to or exceeding 25 grams but less than 100 grams. "Possession" of drugs is statutorily defined as "having control over a thing or substance but it may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K); see, also, *State v. Pumpelly* (1991), 77 Ohio App.3d 470, 477, 602 N.E.2d 714.

[*P24] In this case, the state argued that English had constructively possessed the drugs. A party has constructive possession where, conscious of its presence, he exercises dominion and control over something even though it is not within his immediate physical possession. *State v. Hankerson* (1982), 70 Ohio St.2d 87, 91, 434 N.E.2d 1362; *State v. Harry*, 12th Dist. No. CA2008-01-013, 2008 Ohio 6380, P48.

[*P25] English claims that the state proved only that he was an occupant of the premises where the drugs were found, because the police did not find any drugs on his person, he did not own the residence on Oesper Avenue, and none of the utilities for the residence were in his name.

[*P26] But English admitted to using some of the drugs, he told the police where drugs were located in the bedroom, he was found near the drugs, and the bedroom contained his personal belongings including his mail and photographs. Further, surveillance activity placed him in the residence with his vehicle parked outside in the days immediately before the execution of the warrant. Thus, the

facts demonstrated more than English's mere presence in the residence when the drugs were found. See *State v. Murrell*, 1st Dist. No. C-020333, 2003 Ohio 2068, at P19. After viewing the evidence at trial in the light most favorable to the state, as we are required to do, we easily conclude that a reasonable trier of fact could have found that English had constructively possessed the drugs located in the bedroom, including 5.92 grams of crack cocaine and over 56 grams of noncrack cocaine.

**[*P27]** And we are not persuaded that English's convictions for drug possession were against the manifest weight of the evidence. Although English denied his guilt and presented evidence that other individuals were living in the house, we cannot say that the jury clearly lost its way in finding English guilty. The state impeached his credibility on several occasions, and the jury was in the best position to evaluate the credibility of the witnesses.

**Firearm Specification** [omitted because Petitioner does not include a claim about the firearm specification]

**Having-Weapons-Under-a-Disability Offense**
**[*P30]** English was convicted of two counts of having weapons under a disability in violation of R.C. 2923.13(A)(3). English's 1997 conviction for trafficking in drugs, which he stipulated to at trial, made it illegal for him to "knowingly acquire, have, carry, or use any firearm or dangerous ordnance." R.C. 2923.13(A)(3).

**[*P31]** To "have" a firearm within the meaning of the weapons-under-a-disability statute, the offender must actually or constructively possess it. *State v. Bailey*, 1st Dist. Nos. C-060089 and C-060091, 2007 Ohio 2014, at P36, citing *State v. Messer* (1995), 107 Ohio App.3d 51, 667 N.E.2d 1022; *State v. Duganitz* (1991), 76 Ohio App.3d 363, 601 N.E.2d 642; *State v. Hardy* (1978), 60 Ohio App.2d 325, 327, 397 N.E.2d 773. In this case, the state proceeded against English for constructively possessing the firearms in the Oesper Avenue residence when the police executed the search warrant on November 1, 2002.

**[*P32]** Constructive possession has been defined as "knowingly exercising dominion and control over an object, even though the object is not within the person's immediate physical possession." *Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362, syllabus; *Bailey*, supra, at P36. A defendant's exercise of dominion and control over the area where a firearm is found supports an inference that the

defendant has exercised dominion and control over the firearm. *State v. Pitts*, 4th Dist. No. 99-CA-2675, 2000 Ohio 1986. And the dominion and control necessary to establish constructive possession may be proved by circumstantial evidence. See *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph one of the syllabus; *State v. Hawthorne*, 8th Dist. No. 89345, 2008 Ohio 1815, P18. Moreover, we hold that, in the context of the disability statute, which broadly bars those with a disability from having access to firearms, constructive possession does not require proof of exclusive possession.

[*P33] In this case, the evidence supported a finding that English had constructively possessed both weapons, even though others may have lived in the residence. English was one of only two occupants found in the residence when the warrant was executed, and he had been in the residence for several days. He had handled the shotgun in the past, as demonstrated by the fingerprint evidence and his own admission. The revolver was located in a room containing English's personal belongings, including drugs that he had exercised control over, and the revolver's location was such that English had immediate access to it.

[*P34] We conclude that this evidence, if believed, supported a finding that English had constructively possessed both weapons. Thus, we hold that the evidence at trial was sufficient to support convictions on both counts of having weapons under a disability. And after our review of the record, we are not convinced that those convictions were against the manifest weight of the evidence.

[*P35] In summary, because we conclude that English's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence, we overrule the first, second, and third assignments of error.

*State v. English*, 2010 Ohio 1759, 2010 Ohio App. LEXIS 1480, at **8-18 (Ohio App. 1st Dist. Apr. 23, 2010).

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d

987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order

for a conviction to be constitutionally sound, every element of the crime must be proved beyond a

reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the
> light most favorable to the prosecution, any rational trier of fact
> could have found the essential elements of the crime beyond a
> reasonable doubt . . . . This familiar standard gives full play to the
> responsibility of the trier of fact fairly to resolve conflicts in the
> testimony, to weigh the evidence and to draw reasonable inferences
> from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006);

*United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was

recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E. 2d 492 (1991). Of course,

it is state law which determines the elements of offenses; but once the state has adopted the

elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after

enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110

Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner
> challenges the constitutional sufficiency of the evidence used to
> convict him, we are thus bound by two layers of deference to groups
> who might view facts differently than we would. First, as in all
> sufficiency-of-the-evidence challenges, we must determine
> whether, viewing the trial testimony and exhibits in the light most
> favorable to the prosecution, any rational trier of fact could have
> found the essential elements of the crime beyond a reasonable
> doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781,
> 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the
> evidence, re-evaluate the credibility of witnesses, or substitute our
> judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d
> 618, 620 (6th Cir. 1993). Thus, even though we might have not
> voted to convict a defendant had we participated in jury

> deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010) (slip op., at 5)).

*Coleman v. Johnson*, 566 U.S. ___, 566 U.S. ___, 132 S. Ct. 2060, 182 L. Ed. 2d 978 (2012)(*per curiam)*.

The state appellate decision, quoted above in full, establishes that there was sufficient evidence to convict Petitioner of cocaine possession and having weapons under disability. To put it another way, the jury was not bound to believe Petitioner's testimony about how long ago he put his fingerprints on the shotgun or when he became dressed or who owned the drugs in the bedroom

where a great deal of his property was found.   The arresting officers' testimony, including their testimony about the admissions he made at the time of the search, was enough evidence.   As Respondent points out, the standard does not require the State to disprove every other possible explanation of the circumstances.   The question of credibility of witnesses is for the jury and there was sufficient evidence presented which, if the jury believed it as they evidently did, could convince a rational juror that Petitioner was guilty beyond a reasonable doubt.   Petitioner's Second and Seventh Grounds for Relief should be dismissed with prejudice.

## Ground Three:   Violation of the Fourth Amendment

In his Third Ground for Relief, English contends his Fourth Amendment rights were violated by the search of his residence upon an improper search warrant.   Since the warrant was improper, he argues, the fruits of the search should have been suppressed under *Mapp v. Ohio*, 367 U.S. 643 (1961).

Respondent contends that merit review of this claim is barred by the doctrine of *Stone v. Powell,* 428 U.S. 465 (1976).   That case held Federal habeas corpus relief is not available to state prisoners who allege they were convicted on illegally seized evidence if they were given a full and fair opportunity to litigate that question in the state courts.   *Stone v. Powell,* 428 U.S. 465 (1976). *Stone* requires the district court to determine whether state procedure in the abstract provides full and fair opportunity to litigate, and Ohio procedure does.   The district court must also decide if a Petitioner's presentation of claim was frustrated because of a failure of the state mechanism. Habeas relief is allowed if an unanticipated and unforeseeable application of procedural rule

prevents state court consideration of merits. *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982). The

*Riley* court, in discussing the concept of a "full and fair opportunity," held:

> The mechanism provided by the State of Ohio for resolution of
> Fourth Amendment claims is, in the abstract, clearly adequate. Ohio
> R. Crim. P. 12 provides an adequate opportunity to raise Fourth
> Amendment claims in the context of a pretrial motion to suppress,
> as is evident in the petitioner's use of that procedure. Further, a
> criminal defendant, who has unsuccessfully sought to suppress
> evidence, may take a direct appeal of that order, as of right, by filing
> a notice of appeal. See Ohio R. App. P. 3(A) and Ohio R. App. P.
> 5(A). These rules provide an adequate procedural mechanism for
> the litigation of Fourth Amendment claims because the state affords
> a litigant an opportunity to raise his claims in a fact-finding hearing
> and on direct appeal of an unfavorable decision.

*Id*. at 526.

Petitioner spends a great deal of space in his Reply arguing that the state courts erred in

their decision on this point (Reply, Doc. No. 12, PageID 2036-2043). However, he does not point

to any failure of the Ohio courts to give him a full and fair opportunity to litigate these questions.

He was afforded an evidentiary hearing and the court of appeals discussed this issue at length.

Under those circumstances, Petitioner has not shown that this case falls outside the *Stone v. Powell*

doctrine and this Court cannot reach the merits. Ground Three should therefore be dismissed with

prejudice.


**Ground Four:   Manifest Weight of the Evidence**


In his Fourth Ground for Relief, Petitioner argues that his convictions for possession of cocaine

and having weapons while under a disability are against the manifest weight of the evidence.

As Respondent points out, this Ground for Relief does not state a claim that arises under the

18

United States Constitution and thus cannot be considered in habeas corpus.   Federal habeas corpus is available only to correct federal constitutional violations.   28 U.S.C. §2254(a); *Wilson v. Corcoran,* 562 U.S. ___, 131 S. Ct. 13; 178 L. Ed. 2d 276 (2010)*;Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.   In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."   *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

In *State v. Thompkins,* 78 Ohio St. 3d 380 (1997)*,* the Ohio Supreme Court reaffirmed the important distinction between appellate review for insufficiency of the evidence and review on the claim that the conviction is against the   manifest weight of the evidence.        It held:

> In essence, sufficiency is a test of adequacy.   Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process.   *Tibbs v. Florida* (1982), 457 U.S. 31, 45, 102, 387 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, *citing Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.   Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence.   *Robinson, supra*, 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149.   Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.   It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them.   Weight is not a question of mathematics, but depends on its effect in inducing belief."   (Emphasis added.)

> When a court of appeals reverses a judgment of a trial court on the

> basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs*, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

78 Ohio St. 3d at 387. In *State v. Martin*, 20 Ohio App. 3d 172, 485 N.E. 2d 717 (Hamilton Cty. 1983)(cited approvingly by the Supreme Court in *Thompkins*), Judge Robert Black contrasted the manifest weight of the evidence claim:

> In considering the claim that the conviction was against the manifest weight of the evidence, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

485 N.E. 2d at 718, ¶3 of the syllabus.

Petitioner himself acknowledges in his Reply that the test for whether a judgment is against the manifest weight of the evidence is "much broader that [sic] the test involved with the claim of insufficient evidence." (Reply, Doc. No. 12, PageID 2043.) However, no portion of the United States Constitution is implicated by the manifest weight doctrine of Ohio law. The Fourth Ground for Relief should be dismissed with prejudice.


**Ground Five: Ineffective Assistance of Trial Counsel**

English asserts he was denied the effective assistance of counsel which he is guaranteed under the United States Constitution and under Article I, § 10, of the Ohio Constitution. As noted above, state law issues, including issues of state constitutional law, cannot provide the basis for habeas corpus relief in federal court, so the claims under the Ohio Constitution will not be further examined.

Petitioner's statement of this claim is very broad:

> There are many instances of the defense counsels' ineffective assistance to the Petitioner. The Counsel admitted unequivocally that he was not prepared to go to trial. Tp.: 96-98. Given the fact that defense counsel did not prepare it can be presumed that Petitioner was prejudiced by defenses counsels [sic] inaction, thereby warranting a holding of ineffective assistance of counsel. The counsel doing the Suppressing [sic] hearing told the Judge he was not seeking an evidentiary hearing but filed a motion to compel disclosure of the Confidential Informant.
>
> Both counsel filed motions concerning the Informant and Officer Paul Fangman had not acted in good faith to get the search warrant. Either counsel addressed the probable cause by having Officer Fangman to take the stand in a suppressing or evidentiary hearing. Petitioner was prejudiced by not having the hearings. And unlimited to.

(Petition, Doc. No. 1, PageID 11-12.) In his Reply, Petitioner focuses on the asserted lack of readiness of the attorney who represented him at the time of trial, Edward Felson.[1] While he continues to assert that there are "many instances of defense counsel's ineffective assistance," the Court will only analyze those which have been specifically called to its attention by the Petitioner. A district court is not obliged to search the record for possible instances of ineffective assistance which have not been specifically pled by the petitioner. *See Interroyal Corp. v. Sponseller,* 889

---

[1] Mr. Felson's name is not mentioned in the Petition or the Reply, but the trial transcript shows that he was representing English at the time of trial.

F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990).

The Warden asserts that Ground Five is procedurally defaulted by Petitioner's failure to file his petition for post-conviction relief under Ohio Revised Code § 2953.21 within the time allowed by law.

The procedural default defense in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones,* 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright,* 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963). *Coleman,* 501 U.S. at 724.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d

345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,* 785 F.2d at 138.

Ohio has a rule that limits the time within which a post-conviction relief petition must be filed. Ohio Revised Code § 2953.21(A)(2). The Hamilton County Common Pleas Court enforced this rule against English by dismissing his post-conviction petition as untimely (Entry Granting Motion to Dismiss, Return of Writ, Doc. No. 9, Ex. 9PageID 395). This rule is plainly independent of federal law: while a 2953.21 petition may address either federal or state constitutional claims, the time limit applies equally to both sorts of claims. The claim is also an adequate state ground of decision: a State's interest in setting reasonable time limits on litigating post-conviction claims is clear and this particular limit has been found adequate by the Sixth Circuit. *Carroll v. Coyle*, No. 98-3870, 1999 U.S. App. LEXIS 19449 (6th Cir. Aug. 12, 1999).

23

The Warden also asserts English committed another procedural default when he failed to appeal to the Ohio Supreme Court from the court of appeals' affirmance of the dismissal. Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright v. Sykes*, 433 U. S. 72 (1977). *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Mapes v. Coyle,* 171 F.3d 408, 413 (6th Cir. 1999); *Rust v. Zent,* 17 F.3d 155 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985). Failure to present an issue to the state supreme court on discretionary review constitutes procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). "Even if the state court failed to reject a claim on a procedural ground, the petitioner is also in procedural default 'by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate procedures.'" *Thompson v. Bell*, 580 F.3d 423 (6th Cir. 2009), *citing Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

In his Reply English makes no attempt to excuse these two procedural defaults. He is therefore bound by them and the Fifth Ground for Relief should be dismissed with prejudice.


**Ground Six:   Failure to Disclose the Identity of the Confidential Informant**


In his Sixth Ground for Relief, Petitioner claims his Confrontation Clause rights were violated when the statements of the confidential informant were used to obtain the search warrant for his residence and then the identity of the informant was not disclosed. He claims that the informant's statements were used at trial and the informant thereby became a virtual witness for the State.

The Warden asserts this claim is procedurally defaulted by Petitioner's counsel's failure to

raise it on direct appeal (Return of Writ, Doc. No. 9, PageID 76). English attempted to raise it

himself in a supplemental *pro se* brief which the court of appeals accepted for filing but refused to

consider on the merits because his attorney had not pled it. *State v. English,* No. C-080872, 2010

Ohio 1759, 2010 Ohio App. LEXIS 1480, ¶ 4, n. 1. The court of appeals later declined to find that

it was ineffective assistance of appellate counsel to fail to include it when it rejected Petitioner's

application for reopening:

> The proposed assignments of error would not have presented a reasonable probability of success had counsel advanced them on appeal.
>
> The trial court cannot be said to have abused its discretion in failing to order the state to disclose the confidential informant's identity. The informant's participation was not, as English insists, such that the informant virtually became a witness for the state. See State v. Williams (1983) 4 Ohio St. 3d 74, 76, 446 N.E. 2d 779. And the record does not demonstrate that the informant's testimony was vital to establishing an element of the crimes charged, or that it would have benefited English in preparing or presenting his defense. See *Id.*, syllabus.

*State v. English,* No. C-080872 (Ohio App. 1st Dist. Nov. 18, 2010)(unreported, copy at Return of

Writ, Doc. No. 9, Ex. 9, PageID 492.)

As with Ground One, *supra*, this Court must defer to the state court of appeals'

determination that there was no ineffective assistance of appellate counsel in failing to raise this

assignment of error unless that determination is contrary to or an objectively unreasonable

application of clearly established Supreme Court precedent. It is not, because the proposed

assignment of error would not likely have been successful for the reasons given by the court of

appeals.

As the Warden notes, the controlling Supreme Court precedent on the informant privilege is *Roviaro v. United States*, 353 U.S. 53 (1957). Applying *Roviaro*, English has offered no proof that the confidential informant here would have given exculpatory testimony. English emphasizes in his Reply that, because he was charged with drug trafficking, the State had to prove he was selling drugs and the search warrant was supported by Officer Fangman's affidavit saying that the informant had made a controlled buy. But the facts of the controlled buy were not presented at trial, perhaps because English had granted himself a 4 ½ year "continuance" by absconding from bond. *State v. English, supra*, at ¶ 15. Since the facts of the controlled buy were not presented at trial, English cannot plausibly claim a Confrontation Clause violation from being unable to cross-examine the informant. And in any event, English was acquitted on the trafficking charges.

The Sixth Ground for Relief is procedurally defaulted and should be dismissed with prejudice.

## Ground Eight:   Prosecutorial Misconduct

In his Eighth Ground for Relief, Petitioner claims his trial was unfair because of prosecutorial misconduct (Petition, Doc. No. 1, PageID 16-17). The Warden objects that all of the many purported instances of prosecutorial misconduct set out in the Petition are procedurally defaulted by Petitioner's failure to raise them on direct appeal, except for the claim of misconduct by calling English a liar (Return of Writ, Doc. No. 9, PageID 81-82). The Petitioner makes no response to that argument in his Reply, but merely spells out some of the instances of alleged

misconduct (Doc. No. 12, PageID 2048-2049). The Magistrate Judge finds all of the asserted instances of prosecutorial misconduct, except for calling English a liar, are barred by Petitioner's failure to present them at any time to the state courts.

With respect to the remaining claim of calling English a liar, that claim was raised as the sixth assignment of error on direct appeal. The court of appeals held:

> [*P36] In his sixth assignment of error, English contends that prosecutorial misconduct during closing argument prejudiced his right to a fair trial. English claims that the prosecutor twice expressed his personal opinion that English was a liar.
>
> [*P37] The prosecutor may not give a personal opinion on the veracity of the witnesses. *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 14 Ohio B. 317, 470 N.E.2d 883. During the rebuttal portion of closing argument in this case, the prosecutor, responding to defense counsel's accusations that the state's witnesses had "lied," commented that "under oath, in this setting, [the defendant] looks you in the face and lies," and that "the only proven lies in this case have come in from one single solitary person [the defendant] with a huge motive." The prosecutor, however, tied the comments to English's testimony.
>
> [*P38] English failed to object to the comments, waiving all but plain error. Crim.R. 52(B); *State v. LaMar*, 95 Ohio St.3d 181, 2002 Ohio 2128, P126, 767 N.E.2d 166. Prosecutorial misconduct gives rise to plain error only where it is clear that the defendant would not have been convicted in the absence of the improper comments. *State v. Kelly*, 1st Dist. No. C-010639, 2002 Ohio 6246, P22, citing *State v. Slagle* (1992), 65 Ohio St.3d 597, 604-605, 605 N.E.2d 916.

*State v. English, supra.*

Applying the analysis from *Maupin, supra*, the Court concludes that Ohio does have a procedural rule – the contemporaneous objection rule – which the court of appeals enforced against him. The Sixth Circuit has repeatedly held this is an adequate and independent state

ground for decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012)(*citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 131 S. Ct. 185 (2010).

Petitioner's Eighth Ground for Relief is therefore procedurally defaulted and should be dismissed with prejudice.


## Ground Nine:   Denial of Continuance


In his Ninth Ground for Relief, Petitioner claims his counsel rendered ineffective assistance because the trial court denied him a continuance to properly prepare for trial. English presented this claim to the state courts as a trial court error claim, rather than an ineffective assistance of trial counsel claim, but the Warden does not make a "fair presentation" objection. Instead, the Warden asserts this claim was procedurally defaulted because it was, like the Sixth Ground for Relief, raised only in Petitioner's *pro se* supplemental brief. The court of appeals found this claim procedurally defaulted because it depended on evidence outside the record and thus should have been presented by a petition for post-conviction relief.

> English also contends that he was denied the effective assistance of counsel because his appellate counsel failed to submit assignments of error contending (1) that his trial counsel had been ineffective in preparing for and presenting his defense, and (2) that trial counsel's

ineffectiveness in this regard was, in part, the product of the trial court's abuse of its discretion in overruling the defense's requests to continue the trial. Because these challenges depend for their resolution upon evidence outside the record, the appropriate vehicle for advancing them is a postconviction petition. [footnote omitted] Therefore, English's appellate counsel cannot be said to have been deficient in failing to assign these matters as error on direct appeal.

*State v. English,* No. C-080872 (Ohio App. 1st Dist. Nov. 18, 2010)(unreported, copy at Return of Writ,

Doc. No. 9, PageID 492.)

Again applying the *Maupin* analysis, Ohio does have a rule which bars consideration on direct appeal of matters outside the record, a rule it has in common with most appellate courts in most circumstances. Because it could not have adjudicated this claim on direct appeal, it was not ineffective assistance of appellate counsel to have failed to include it there. Hence the court of appeals' decision that it was not ineffective assistance of appellate counsel is neither contrary to nor an objectively unreasonable application of *Strickland* and its progeny.

Even if this claim were preserved for decision on the merits, Petitioner would not prevail. The trial record reflects that the attorney who represented English as of the day of trial was the sixth attorney English had retained to represent hm. The attorney indicated he was prepared to proceed, albeit not in the way English wanted him to proceed. Mr. English has not shown any prejudice in the failure to grant the continuance in light of the long pendency of the case. There was no abuse of discretion in denying the continuance under these circumstances. *See, Ungar v. Sarafite*, 376 U.S. 575 (1964).

The Ninth Ground for Relief should be dismissed with prejudice.

**Ground Ten: Failure to Consider *pro se* Supplemental Brief on the Merits**

The Hamilton County Court of Appeals allowed Mr. English to file a *pro se* supplemental brief on direct appeal but then declined to consider the merits of the assignments of error he pled because they had not been included in the brief filed by counsel. As his Tenth Ground for Relief, English complains that the court of appeals did not adjudicate the issues in his *pro se* brief. In neither his Petition nor his Reply does he suggest any provision of the United States Constitution which this violated.

The Warden argues that this claim is procedurally defaulted because English failed to include it in his direct appeal to the Ohio Supreme Court, and English makes no response. The claim is therefore procedurally defaulted and should be dismissed with prejudice on this basis. Moreover, even if it were preserved for decision on the merits, it should be dismissed. There is no constitutional right to hybrid representation, with a defendant representing himself and also having counsel. *McKaskle v. Wiggins*, 465 U.S. 168 (1984).

**Ground Eleven: Admission of Douglas Ventre's testimony**

Petitioner complains that the trial court permitted Douglas Ventre to testify even though his name was not on the prosecution's list of witnesses disclosed in discovery. English argues this claim in his Petition largely as a violation of Ohio R. Crim. P. 16; he cites neither a provision of the United States Constitution nor any case law which would suggest this violated any constitutional right.

30

The Warden argues that the claim is one of state law and therefore not cognizable (Return of Writ, Doc. No. 9, PageID 85-86). Respondent also claims this Ground for Relief is procedurally defaulted because it was not raised on direct appeal and plainly could have been raised there on the basis of the trial court record. Finally, the Warden argues there was no prejudice because when Ventre's name was finally disclosed, the trial judge offered English's counsel additional time to prepare and in fact Ventre testified five days later.

In his Reply English argues this claim purely in terms of Ohio law. He has not shown that disclosure of the witness' name at the time is was disclosed prejudiced him in any way. That is, he has not shown how more time to prepare for Officer Ventre's admittedly damaging testimony would have blunted its effect. Ventre was able to testify that English was found in the bedroom with at least some of the drugs which formed the basis for conviction and a loaded .38 revolver. English does not even suggest what he could have done to combat this testimony if he had known about it earlier.

The Eleventh Ground for Relief is both procedurally defaulted and without merit. It should be dismissed with prejudice.


**Ground Twelve:   Cumulative Error**


In his Twelfth Ground for Relief, English complains that the cumulative effect of all the errors committed during trial deprive him of a fair trial. The Warden notes that this claim is not cognizable in habeas corpus because the United States Supreme Court has not held that distinct constitutional claims can be cumulated to support habeas relief. *Moore v. Parker*, 425 F.3d 250,

(6th Cir. 2005), *citing Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002); *Lorraine v. Coyle*, 291 F.3d 416 (6th Cir. 2002). Cumulative error claims are not cognizable because the Supreme Court has not spoken on the issue. *Williams v. Anderson*, 460 F. 3d 789, 816 (6th Cir. 2006), *citing Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005).

Moreover, even if individual constitutional errors could be cumulated, Petitioner has not shown any constitutional error.

Accordingly, the Twelfth Ground for Relief should be dismissed.

## Conclusion

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and this Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

July 30, 2012.

s/ *Michael R. Merz*
United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).